OPINION OF THE COURT
Timmie Erin Elsner, J.
Petitioner moves in this nonpayment proceeding for an order to “renew” its application to strike respondent’s second counterclaim[1] upon the ground that it is barred by the recently amended CPLR 213-a. Respondent opposes.[2]
The issues before the court are (1) whether petitioner’s motion to renew is timely; and if so, (2) whether the recent amendment of CPLR 213-a mandates a reconsideration of the court’s initial denial of petitioner’s application to strike respondent’s claim for rent overcharge.
Procedural History
Respondent took occupancy of the premises at 1482 York Avenue, apartment 6-G, pursuant to an initial lease dated August 5, 1991 for a term which commenced on August 15, 1991. The legal rent registered by the landlord predecessor-in-interest with the Division of Housing and Community Renewal (DHCR) as of April 1991 was $267.45 per month. Respondent’s initial rent was $750 per month. The rent as last renewed was $772.50 per month.
Petitioner instituted this nonpayment proceeding seeking rent from January 1995 through August 1995 at the rate of *962 $772.50 per month. Respondent’s answer asserted various affirmative defenses and counterclaims, including rent overcharge. Issue was joined on October 3, 1995.
Petitioner’s motion to strike respondent’s fifth affirmative defense and second counterclaim was denied by the Honorable Eileen Bransten in her January 5, 1996 decision.[3] The court found that there was a triable issue as to whether the premises was currently registered with the DHCR. The court also rejected petitioner’s argument that respondent’s rent overcharge claim was barred by the thén four-year CPLR 213-a Statute of Limitations. Petitioner had contended that the claim for overcharge began to accrue as of the date the lease was signed, August 15, 1991. The court endorsed respondent’s position, citing Hart-Zafra v Pilkes (NYLJ, Feb. 1, 1995, at 29, col 2),[4] for the proposition that the cause of action for rent overcharge accrues on a continuing basis every month that respondent is overcharged.
By order dated April 22, 1996, Judge Bransten denied petitioner’s motion to reargue her denial of petitioner’s previous motion to strike respondent’s second counterclaim. Judge Bransten noted that the case of Hart-Zafra v Pilkes (supra) had recently been affirmed by the Appellate Term (NYLJ, Apr. 12, 1996, at 25, col 3). Respondent’s application for discovery was also granted.
Respondent then moved for partial summary judgment as to petitioner’s liability for rent overcharge, treble damages and to establish the legal monthly rent at $275.48. The motion was granted by the Honorable Saralee Evans by order dated December 13, 1996. In particular, Judge Evans held that the legal rent for the subject premises was $275.48 per month, effective as of the date of respondent’s first lease.
Respondent moved to reargue Judge Evans’ determination and the motion was granted in part by her decision of April 4, 1997. Judge Evans adjusted the monthly legal rent to $267.45 plus any lawful Rent Guidelines Board increase to which
*963 petitioner was entitled when respondent moved into the premises. The matter was set down for a hearing to determine petitioner’s liability for any rent overcharge.
Petitioner’s Motion for Renewal
In support of its present motion, petitioner argues that the Rent Regulation Reform Act of 1997 (L 1997, ch 116, § 34), enacted on June 19, 1997, effective immediately, which amended CPLR 213-a obviates respondent’s second counterclaim.
Respondent opposes this application.
Timeliness
CPLR 2221 permits a party to move for leave to renew or reargue a prior motion.
“A motion for reargument, addressed to the discretion of the court, is designed to afford a party an opportunity to establish that the court overlooked or misapprehended the relevant facts, or misapplied any controlling principle of law * * *
“An application for leave to renew must be based upon additional material facts which existed at the time the prior motion was made, but were not then known to the party seeking leave to renew, and, therefore, not made known to the court” (Foley v Roche, 68 AD2d 558, 567-568 [1st Dept 1979]). Although petitioner has denominated his motion as one for “renewal”, a motion which seeks reconsideration of a court’s decision based upon a subsequent change in the law is a motion to reargue. Petitioner’s error in mischaracterizing his application, however, is not fatal.
Ordinarily a motion to reargue must be made within the time in which an appeal from the original order could have been taken (Siegel, NY Prac § 254, at 383 [2d ed]). If an appeal is pending when the motion to reargue is submitted, however, then the motion to reargue cannot be seen as trying to extend the time for appeal (Matter of William H. Van Vleck, Inc. v Klein, 50 Misc 2d 622 [Sup Ct, Kings County 1966]), and the court is then more likely to entertain it. This is especially true when the motion for reargument is based upon a change in the law while the appeal is pending (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2221:8, at 184; 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 2221.04). In Weissblum v Mostafzafan Found. (60 NY2d 637 [1983]), the Court of Appeals entertained a motion to reargue, where li *964 ability had been determined, but not the amount of damages. The Court noted that subsequent to its determination of liability there was a change in the law which by its terms was made applicable to all pending proceedings. Such is the case in the instant matter. Here, the parties filed their notices of appeal soon after Judge Bransten issued her original determination. During the pendency of the appeal, the Statute of Limitations governing overcharge claims has been amended. The new statute provides for application to all pending matters.[5] Therefore, this court may now entertain petitioner’s motion to reargue, and petitioner’s motion is so granted.
History of CPLR 213-a and Its Interpretation by the Courts
Prior to amendment CPLR 213-a simply provided: “An action on a residential rent overcharge shall be commenced within four years of such overcharge.”
The creation in 1983 of a new Statute of Limitations of four years for claims of rent overcharge generated controversy as to whether such calculations could be based upon information produced prior to those four years, even if the tenant could obtain relief only for the most recent four years.[6]
This issue became more complicated because the Statute of Limitations was merely a small part of a greater regulatory scheme of which all the other portions only required landlords to maintain records for the most recent four years.[7] An owner could certainly choose to maintain records for a time period longer than that required. Owners who relied on rent regulations and maintained records for the required four years could have been and were subject to negative inferences in the *965 calculation of the legal rent depending on the evidence introduced.[8]
In Hart-Zafra v Pilkes (supra) prior to the recent determination by the Appellate Division, the lower court interpreted CPLR 213-a and RSC § 2526.1 as allowing the introduction of evidence without regard to how many years prior the overcharge occurred even if the tenant could only recover damages for the final four years. The new amendment prohibits the examination of any rent history prior to the most recent four years.
Amendment of CPLR 213-a
Petitioner argues that respondent’s claim for rent overcharge is now time barred, based upon the changes in CPLR 213-a, as amended, which provides: “An action on a residential rent overcharge shall be commenced within four years of the first overcharge alleged and no determination of an overcharge and no award or calculation of an award of the amount of any overcharge may be based upon an overcharge having occurred more than four years before the action is commenced. This section shall preclude examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action.” (Emphasis added.)
The word “such” in the old provision of CPLR 213-a was changed to “the first overcharge alleged”. Petitioner argues that by changing this portion of CPLR 213-a the Legislature’s intent was to limit a tenant’s ability to bring an overcharge proceeding.
Although no documented legislative history is available, it appears the statute was amended to bring the limitation provisions of CPLR 213-a into conformance with the provisions which require an owner to retain records for four years. Both the Rent Stabilization Law of 1969 (Administrative Code of City of NY, tit 26, ch 4) and Code provide that an owner must keep records for a four-year period. The new amendment specifically provides that a tenant may collect damages for any overcharge for a period of four years from the first overcharge alleged.
*966 Not only did Hart-Zafra (supra) permit the court to examine records which predated an overcharge claim by more than four years, the trial court also determined that each installment of a rent overcharge is a separate violation giving rise to a separately accruing cause of action. The trial court specifically endorsed the concept that a cause of action for rent overcharge is a continuing violation that recurs each month that a landlord collects an illegal rent. The court held: “In light of these policy considerations, this Court is of the opinion that each monthly payment of an unlawful rent based upon an increase pursuant to RSC Sec. 2522.4(a)(1) represents a continuing interference with a statutory right and the cause of action accrues on a continuing basis rather than at the time of the initial violation. As such, the statute of limitations pursuant to CPLR Sec. 213-a bars recovery of damages only to the extent that such damages were incurred prior to four years from the interposition of the overcharge claim regardless of when the initial overcharge occurred” (NYLJ, Feb. 1, 1995, at 29, col 2). Notably, the Appellate Division did not reverse this aspect of the decision.
Furthermore, the holding that a cause of action accrues anew with each month’s payment of rent is in conformance with New York law interpreting Statutes of Limitations holding that a continuous wrong will give rise to successive causes of action (509 Sixth Ave. Corp. v New York City Tr. Auth., 15 NY2d 48 [1964]; Rahabi v Morrison, 81 AD2d 434 [2d Dept 1981]). “Despite the general principle that a cause of action accrues when the wrong is done, regardless of when it is discovered, if the wrong is continuing, so that each day gives rise to a new cause of action, then each day will also bring a new statute of limitations” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C203:l, at 141).
New York law recognizes that allegations of a continuing tort may toll otherwise applicable Statutes of Limitation (Neufeld v Neufeld, 910 F Supp 977 [SD NY 1996]). In Phoenix Acquisition Corp. v Campcore, Inc. (81 NY2d 138, 141 [1993]), the Court of Appeals found that where there was a default on a promissory note which provided for payment by installments, like payment of monthly rent, “[t]he Statute of Limitations began to run only for that discrete obligation and amount.”
Significantly, the Court of Appeals has also upheld the imposition of a penalty for each monthly overcharge of rent (Matter of Elm Realty v Office of Rent Control, 54 NY2d 650 [1981]). Petitioner has not demonstrated that the Legislature intended to alter such a long-standing approach. The Appellate *967 Division, in its recent determination of Zafra v Pilkes (supra), limited its holding to application of the new four-year rule, and did not change its view that a rent overcharge can be a continuing wrong.
This court’s analysis of CPLR 213-a is also supported by considering the difference between CPLR 213-a and the method of computing periods of limitation generally as set forth in CPLR 203. That section provides that unless otherwise prescribed, the time within which an action must be commenced shall be computed from the time the cause of action accrued to the time the claim is interposed. CPLR 213-a, as amended, does otherwise prescribe. Here, the clock starts to run from the time of allegation, not the time of accrual.
Conclusion
This court finds that it may examine respondent’s claim for rent overcharge four years prior to October 1995, but is precluded from examining the rent history of the premises which predates the imposition of the answer by four years. The amendments to CPLR 213-a do not affect the holding of Judge Eileen Bransten in her decision and order of January 5, 1996, modified in part by the decision and order dated April 22, 1996, which held that each monthly payment of an unlawful rent represents a continuing interference with a statutory right, thereby the cause of action accrues on an ongoing basis and the overcharge claim is not limited to the time of the initial violation.
The Rent Stabilization Code requires an annual rent registration statement to be filed annually on April 1st of each year.[9] In this case, the landlord registered a rent of $267.45 per month as the legal rent in effect as of April 1991. This registration was not amended when a new lease was signed, and thus remained on record as the legal rent for the period April 1991 through March 30, 1992.
Pursuant to the amendments to CPLR 213-a, this court is entitled to examine the registration in effect four years prior to imposition of a rent overcharge claim as part of the rent history. In this instance, the discrepancy between the 1991 legally regulated rent of $267.45 per month and the initial lease amount of $750 per month supports the respondent’s claim.
*968 Based upon the foregoing, petitioner’s application to renew its motion is granted, and upon such renewal its application to strike respondent’s second counterclaim is denied.

. Respondent’s second counterclaim alleged: “Petitioner knowingly charged respondent rent in excess of the legal rent for respondent’s apartment and has collected the overcharge from respondent causing respondent damages in the amount of $10,000.00, plus treble damages, for a total of $30,000.00.”

. The court notes that the parties have consented to submit this motion to “renew” to this court even though the decision in question was determined by Judge Bransten. She is now sitting as an Acting Supreme Court Justice, and is unavailable to accept this motion in any event.

. Petitioner has appealed to the Appellate Term the portion of Judge Bransten’s decision which denied petitioner’s motion to strike respondent’s second counterclaim. Respondent cross-appealed that portion of the decision which struck respondent’s demand for a bill of particulars and awarded sanctions against respondent’s counsel. In her decision of April 22, 1996, Judge Bransten withdrew imposition of sanctions against respondent’s attorney.

. Hart-Zafra v Pilkes was affirmed twice (affd sub nom. Zafra v Pilkes, NYLJ, Apr. 12, 1996, at 25, col 3 [App Term, 1st Dept], affd NYLJ, July 28, 1997, at 25, col 4 [1st Dept, July 24, 1997]), and most recently was reversed (245 AD2d 218 [1st Dept 1997]).

. Rent Regulation Reform Act of 1997 (L 1997, ch 116, § 34, eíf June 19, 1997) is applicable “to any action or proceeding pending in any court” (L 1997, ch 116, § 46 [1]).

. CPLR 213-a was originally enacted as part of the Omnibus Housing Act of 1983, which among other things placed residential rent administration and regulation under State direction, provided for a system of residential rent registration and prescribed penalties for rent overcharge. Pursuant to this section, prior to its amendment in June of 1997, a tenant was limited to collecting overcharges for a period of four years. Courts had held, however, that in order to determine the amount of the overcharge, records going back longer than four years could be examined to establish a base rent on which subsequent increases would be calculated. Thus the underlying calculations used to compute whether the tenant had been overcharged could substantially predate the four-year period predating imposition of the claim.

. See, e.g., Rent Stabilization Code (9 NYCRR [RSC]) § 2523.7.

. A situation could easily arise where an owner took a substantial rent increase for improvements made to the premises, saved records relating to the improvements four years after the rent increase was registered with DHCR, and then discarded them. In the event that a tenant who took occupancy some years later complained of a rent overcharge, the court could look at DHCR records reflecting the increase, but the owner would have no records available to substantiate its entitlement to same.

. Rent Stabilization Code § 2528.3.