*Morris Jones v. Roxanne Smith*, No. 185, Sept. Term 2024.  Opinion by Arthur, J.

**REAL PROPERTY—NUISANCE—TEMPORARY VS. PERMANENT NUISANCE**

A plaintiff must file a nuisance action, like all other civil actions in Maryland, within three years from the date it accrues unless another provision of the Maryland Code provides otherwise.  For purposes of the statute of limitations, Maryland courts draw a distinction between permanent nuisances and temporary nuisances.  A claim for permanent nuisance must be brought within three years of the date when the permanency of the conditions causing the nuisance becomes manifest to a reasonably prudent person.  With respect to a claim for a temporary nuisance, on the other hand, successive actions may be brought for damages for each invasion of the plaintiff's land until the period of invasion ends.

The difference between a temporary and a permanent nuisance is that a temporary one can be abated, while a permanent one is presumed to continue indefinitely.  Since, technically, any nuisance can be abated, Maryland courts focus not on the possibility of abatement but rather the likelihood of abatement when evaluating a nuisance.

In this case, the appellant complained to the court in 2022 that the appellee's construction of an addition to the rear of her home in 2010 and a patio and fence in 2016-2017 constituted an abatable temporary nuisance.  The appellant complained that every time it rained, the two structures caused water to pool in his yard.

The Appellate Court of Maryland held that the construction of the addition and the patio and fence constituted permanent nuisances.  When a nuisance results from the construction of a structure that is intended to be permanent in nature, it is typically a permanent, rather than a temporary, nuisance.  Even though a permanent structure may continue to cause harm indefinitely, general damages are measured by the diminished value rule, and a plaintiff's award will constitute the loss in property value attributable to the permanent structure's continuing effects.  Because the plaintiff's recovery encompasses diminution in property value attributable to a future harm, the cause of action accrues for statute of limitations purposes when the permanent nuisance first occurs.  In this case, because the permanent structures were built in 2010 and 2016-2017, the three-year statute of limitations barred the appellant's 2022 claims for nuisance.

**NEGLIGENCE AND TRESPASS—CONTINUING HARM DOCTRINE**

The continuing harm doctrine tolls the statute of limitations in negligence and trespass cases where there are continuing violations.  As with temporary nuisances, every repetition of negligence or trespass creates a new cause of action and a new start date for the statute of limitations.  Nonetheless, the continuing harm doctrine requires that a

tortious act, and not just the continuing effects of a prior tortious act, fall within the limitation period.

In this case, the appellee engaged in only two earlier acts, namely the construction of the addition and the construction of the patio and fence. That appellant continues to suffer alleged harms as a result of those acts does not convert them into continuing harms. Appellant did not show that appellee has engaged in a series of acts that would delay the accrual of a cause of action for negligence or trespass since the construction of those structures. Appellant's claims of negligence and trespass are barred by the statute of limitations.

Circuit Court for Baltimore City
Case No. 24-C-22-003140

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0185

September Term, 2024

_____

MORRIS JONES

v.

ROXANNE SMITH

_____

Arthur,
Leahy,
Eyler, Deborah S.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed: May 1, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

A property owner in Baltimore City sued his next-door neighbor. He alleged that the neighbor built additions to the rear of her rowhome that encroached on his property and blocked his downspouts, causing water to pool in his yard when it rained. In his complaint, the property owner brought actions for nuisance, trespass, and negligence. The circuit court concluded that the property owner's claims were barred by the three-year statute of limitations on civil actions and granted summary judgment in the neighbor's favor.

The property owner appealed to this Court. We affirm the judgment of the circuit court.

### FACTUAL AND PROCEDURAL HISTORY

Morris Jones and Roxanne Smith own adjacent row homes in Baltimore. In 2010, Ms. Smith hired a construction company to build an "addition/extension" to the rear of her property. Ms. Smith also asked the construction company to build a rear patio and fence at around the same time.

At some point in 2013, Gloria Braxton, the mother of Mr. Jones's children, complained to the Baltimore City Department of Housing and Community Development that Ms. Smith's downspout in the rear of her property was discharging water onto Mr. Jones's property. In June 2013, an employee of the department responded to the complaint and requested that Ms. Smith "be issued a violation notice." By July 2013, another employee of the housing department indicated that the problem with the downspout had been "corrected" and that water was "running away from [Mr. Jones's] property."

In February 2014, a housing department employee responded to another complaint from Ms. Braxton. The employee noted that Ms. Smith's contractor had "built a rear addition under permit" that was approved to be 17 feet wide and eight feet deep. The employee determined that the contractor "actually built" an addition that was 17 feet wide but 10 feet and 10 inches deep. In addition, the employee noted that Ms. Smith had built "a rear patio and . . . rear fence without any permits or inspections."

At some point in 2014, the City filed suit against Ms. Smith. According to Ms. Smith, the lawsuit sought to require her to submit amended permits reflecting the actual dimensions of her rear addition. The lawsuit did not proceed, apparently because Ms. Smith was on active duty with the armed forces of the United States. Eventually, however, Ms. Smith submitted new drawings "to show the correct dimensions of the rear addition." The housing department retroactively approved the addition in 2020.

Meanwhile, in January 2015, Mr. Jones sued Ms. Smith in the District Court of Maryland for Baltimore City. According to Ms. Smith, the lawsuit "assert[ed] claims relating to the prior construction in the rear of [Ms. Smith's] property." The district court dismissed Mr. Jones's suit, without prejudice, in January 2017.

Mr. Jones or Ms. Braxton lodged other complaints with the housing department, citing Ms. Smith's various alleged code violations. In September 2015, the department responded to a complaint that Ms. Smith's rear fence was "encroaching on [Mr. Jones's] property line." The department determined the "condition [did] not exist." In September 2016, Ms. Braxton complained to the department that Ms. Smith was "working outside the scope of her permit" on a deck connected to the rear extension. The record does not

disclose what action, if any, the department took in response to that complaint. In February 2017, Ms. Braxton complained that Ms. Smith's property did not have downspouts. The department visited the property, observed a rear downspout, and determined that there was no cause for action.

On April 27, 2018, Ms. Smith filed suit against Mr. Jones in the District Court of Maryland for Baltimore City. The record does not disclose the nature of the claims asserted, but Maryland Judiciary Case Search describes them as tort claims. On September 6, 2019, Mr. Jones counterclaimed, alleging, among other things, nuisance, trespass, and negligence. As a basis for his counterclaim, Mr. Jones specifically alleged that Ms. Smith's deck "encroaches . . . and continues to encroach on his property"; that the deck was built in such a way as to cause "water to run-off onto [his] property[,] causing damage to [his] property"; and that Ms. Braxton had complained to Ms. Smith "on many, many occasions about the problems with the deck" and had contacted the housing department to complain that Ms. Smith had built the deck "without proper permits." The district court dismissed the case, without prejudice, on October 31, 2019.

Mr. Jones filed the complaint in this case on July 18, 2022, in the Circuit Court for Baltimore City. The complaint included three counts: nuisance, trespass, and negligence. The operative portions of the complaint are copied almost verbatim from the 2019 counterclaim. Each count alleged damages to Mr. Jones's property from the construction of the rear extension, built in 2010, and the patio and fence, built in 2016.

After discovery, Ms. Smith moved for summary judgment. She argued that Mr. Jones's claims "are clearly barred by the three-year statute of limitations" in section

3

5-101 of the Courts and Judicial Proceedings Article of the Maryland Code (1974, 2020 Repl. Vol.). Ms. Smith argued that it was "clear from the face" of Mr. Jones's complaint that he was complaining of "the construction of the addition/extension" in 2010 and the "additional construction of a deck and upgraded fence in 2016-2017." Ms. Smith contended that, because Mr. Jones filed the current complaint in July 2022, it was "well beyond the three-year statute of limitations." Ms. Smith also contended that the continuing harm doctrine, which "tolls the statute of limitations in cases where there are continuous violations," did not apply in this instance because the statute of limitations is not tolled when the alleged harm is the "'continuing effect[] of a single earlier act.'" *Bacon v. Arey*, 203 Md. App. 606, 655 (2012) (quoting *MacBride v. Pishvaian*, 402 Md. 572, 584 (2007)). Ms. Smith argued that the alleged harm in this case was a "sole alleged tortious act of building a deck and addition/extension," which would not qualify as a continuing harm.

Mr. Jones opposed Ms. Smith's motion. Mr. Jones contended that the nuisance was temporary rather than permanent, which means that he could bring successive damages actions "for each invasion of [his] land until the period of prescription has elapsed[.]" *Goldstein v. Potomac Elec. Power Co.*, 285 Md. 673, 690 n.4 (1979). Mr. Jones also contended that Ms. Smith had "committed continuous violations," which included "the building of the extension larger than allowed by the permit, the building of the concrete rear and fence[,]" and the building of the "roof [that] extends over [Mr. Jones's] property and covers the rain spouts on his property."

4

The parties appeared in the circuit court on February 14, 2024, for a hearing on Ms. Smith's motion for summary judgment. At the close of the hearing, the court granted summary judgment in favor of Ms. Smith. The court determined that any nuisance was permanent in nature, making it "completely undisputed" that Mr. Jones had three years from when a reasonable person would have had notice of the nuisance to file a complaint. The court also determined that the continuing harm doctrine did not apply to toll the statute of limitations in this case. The court ruled that any nuisance was a "continuing effect[]" of a single act, which "does not toll the statute of limitations at all."

Mr. Jones noted a timely appeal to this Court.

## QUESTIONS PRESENTED

Mr. Jones presents two questions for our review:

1. Did the circuit court err in holding that Mr. Jones's claim for nuisance was barred by the statute of limitations?

2. Did the circuit court err in holding that Mr. Jones's claims for trespass and negligence were barred by the statute of limitations?

We answer "no" to both questions and affirm the circuit court's judgment.

## STANDARD OF REVIEW

When a party moves for summary judgment, "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f). "We review the circuit court's grant of summary judgment without deference." *Macias v. Summit Mgmt.,*

*Inc.*, 243 Md. App. 294, 312-13 (2019) (citing *Koste v. Town of Oxford*, 431 Md. 14, 25 (2013)).  The standard is well known:

> When reviewing a grant of summary judgment, we determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law.  This Court considers the record in the light most favorable to the nonmoving party and construe[s] any reasonable inferences that may be drawn from the facts against the moving party.

*Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 107-08 (2014) (citations and quotation marks omitted).

## DISCUSSION

### I.  The Statute of Limitations Generally

Under section 5-101 of the Courts and Judicial Proceedings Article, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  Mr. Jones does not contend that any other provision of the Code provides a different period of time.

A claim "accrues" when "'the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury.'"  *Windesheim v. Larocca*, 443 Md. 312, 326-27 (2015) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95-96 (2000)).  The determination of when an action accrues "may be based solely on law, solely on fact, or on a combination of law and fact[.]"  *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. at 95.  When the material facts are not in genuine dispute and a reasonable factfinder could reach only one conclusion as to whether the claim accrued

6

more than three years before the plaintiff filed suit, a court may properly resolve the question of accrual on a motion for summary judgment. *See, e.g.*, *Bank of New York v. Sheff*, 382 Md. 235, 247 (2004); *see also Windesheim v. Larocca*, 443 Md. at 334; *Russo v. Ascher*, 76 Md. App. 465, 471 (1988).

## II. Nuisance

"Maryland courts have adopted Section 821D of the Restatement (Second) of Torts (1965)," which defines a private nuisance as "'a nontrespassory invasion of another's interest in the private use or enjoyment of land.'" *Blue Ink, Ltd. v. Two Farms, Inc.*, 218 Md. App. 77, 92 (2014) (quoting *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 80 (1994)).

For purposes of the statute of limitations, Maryland courts draw a distinction between permanent nuisances and temporary nuisances. "A claim for a permanent nuisance must be brought within three years of the date when 'the permanency of the conditions causing the reduction in the market value of the land bec[omes] manifest to a reasonably prudent person[.]'" *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 643 (2013) (quoting *Goldstein v. Potomac Elec. Power Co.*, 285 Md. 673, 689 (1979)); *see also Hoffman v. United Iron & Metal Co., Inc.*, 108 Md. App. 117, 144 (1996) (stating that "[a] suit for damages as a result of a permanent nuisance must be brought within three years of the time that the permanency of the condition becomes manifest to a reasonably prudent person"). With respect to a claim for a temporary nuisance, on the other hand, "'successive actions may be brought for damages for each invasion of the plaintiff's land

until the period of prescription has elapsed[.]'" *Litz v. Maryland Dep't of Env't*, 434 Md. at 644 (quoting *Goldstein v. Potomac Elec. Power Co.*, 285 Md. at 690 n.4).

"'The difference between a permanent and a temporary nuisance is that a temporary one can be abated, while a permanent nuisance will be presumed by its character and circumstances to continue indefinitely.'" *Hoffman v. United Iron & Metal Co., Inc.*, 108 Md. App. at 143 (quoting *Moy v. Bell*, 46 Md. App. 364, 371 (1980)) (internal quotation marks omitted). Technically, however, "any nuisance . . . can [be] abate[d.]" *Moy v. Bell*, 46 Md. App. at 371. Thus, in evaluating whether a nuisance is permanent or temporary, courts focus not on "the possibility of abatement but rather its likelihood." *Id.*

Mr. Jones argues that Ms. Smith's construction of the extension larger than the housing department's permit allowed and the construction of the deck and fence without a permit constitute abatable temporary nuisances. Mr. Jones points to "the Housing Department log that stated that [Ms. Smith] needed to abate these violations" and a housing department order in which Ms. Smith "consented to abating these violations." We disagree that the department's comments can be read to imply that the structures on Ms. Smith's property have allegedly caused anything other than a permanent nuisance as that term is understood in Maryland law.

When a nuisance results from the construction of a structure that is intended to be permanent in nature, it is typically a permanent, rather than a temporary, nuisance. *See J.T. Donohue Realty Co. v. Wagner*, 154 Md. 588, 594 (1928) (stating that because a sewage plant "in the very nature of things is of a permanent character[,]" the purchaser of

8

nearby property "must be presumed to have known that such damages to the property past, present, and future[,] occasioned by the location, establishment, or operation of the plant in a normal manner accrued to the person or persons owning the property at the time the conditions causing the damage first came into existence, and must have been recovered by such person or persons in one action"); *see also Hager v. City of Devils Lake*, 773 N.W.2d 420, 430 (N.D. 2009) (holding that a nuisance created by drainage from a permanent storm water drainage system was a permanent nuisance).[1]

Even though a permanent structure may "'continue to cause harm indefinitely into the future, general damages are measured by the diminished value rule.'" *Hager v. City of Devils Lake*, 773 N.W.2d at 429 (quoting 1 Dan B. Dobbs, *Law of Remedies* § 5.11(1) (2d ed.1993)). Under that rule, the "'future effects are captured all at one time.'" *Id.* (quoting 1 Dan B. Dobbs, *Law of Remedies*, *supra*, § 5.11(1)). The plaintiff thereby receives the "'loss in value attributable to the future continuance of the invasion.'" *Id.* (quoting 1 Dan B. Dobbs, *Law of Remedies*, *supra*, § 5.11(1)). Because the plaintiff's recovery encompasses the diminution attributable to the future harm, "'the cause of

---

[1] In *Goldstein v. Potomac Electric Power Co.*, 285 Md. 673, 683 (1979), the Court answered a certified question in which a federal court had assumed that air pollution from a power plant was "permanent and not abatable." The Court, however, observed that the nuisance "may not be of permanent duration, but may be abated[,]" because the plant's owner had entered into a consent decree to bring the plant into compliance with Maryland's environmental regulations. *Id.* The court also observed "that the nuisance alleged by appellants, if it exists, is subject to abatement through the injunctive process by the State Department of Health and Mental Hygiene and the Public Service Commission." *Id.*

action will accrue for statute of limitations purposes when the permanent nuisance or trespass first occurs.'" *Id.* (quoting 1 Dan B. Dobbs, *Law of Remedies*, *supra*, § 5.11(1)).

Here, the circuit court correctly concluded that the alleged nuisance is permanent and not temporary. The alleged nuisance results from the construction of structures that are permanent in nature—a deck and a fence. The alleged harms may continue into the future, but the remedy for those harms was damages for the diminished value of Mr. Jones's property. Mr. Jones acquired that remedy when the offending structures were first installed. Because there is no dispute that those structures were installed more than three years before Mr. Jones instituted this lawsuit in 2022, the statute of limitations bars his claims.

Mr. Jones's complaint tacitly confirms that he alleged a permanent nuisance, not a temporary one. In paragraph 13 of his complaint, in which he alleged the basis for his nuisance claims, Mr. Jones asserted that the interference with his property "has cause [sic] a diminution in value of [his] property." In the *ad damnum* clause, in the very next sentence of the complaint, Mr. Jones demanded compensatory damages for the diminution in the value of his property.

"Under Maryland law, permanent damages, past, present and prospective, for diminution in the market value of land caused by a nuisance can only be recovered if the nuisance is permanent." *Goldstein v. Potomac Elec. Power Co.*, 285 Md. at 682. Thus, by demanding damages for the alleged diminution in the value of his property, Mr. Jones alleged a claim for permanent nuisance. His claim for permanent nuisance undoubtedly accrued more than three years before July 18, 2022, because Ms. Smith's alleged

10

violations have been the subject of complaints since as long ago as 2010.[2]  The circuit

court, therefore, did not err in concluding that, as a matter of law, the statute of the

limitations barred Mr. Jones's nuisance claim.

### III.    Negligence and Trespass

Mr. Jones also argues that the continuing harm doctrine served to toll the statute of

limitations with respect to his negligence and trespass claims.  We disagree.

"'[T]he continuing harm or continuing violation doctrine . . . tolls the statute of

limitations in cases where there are continuing violations.'"  *Litz v. Maryland Dep't of*

*Env't*, 434 Md. 623, 646 (2013) (quoting *MacBride v. Pishvaian*, 402 Md. 572, 584

(2007)) (internal quotation marks omitted).  In negligence and trespass actions, "we apply

the same principle as with a temporary nuisance claim where 'every repetition of the

wrong creates further liability and creates a new cause of action, and a new statute of

limitations begins to run after each wrong perpetuated.'"  *Id.* (quoting *Jones v. Speed*, 320

Md. 249, 260 n.4 (1990)).

Nonetheless, the continuing harm doctrine requires that "'a tortious act—not

simply the continuing ill effects of prior tortious acts—fall within the limitation

period[.]'"  *Bacon v. Arey*, 203 Md. App. 606, 662 (2012) (quoting *MacBride v.*

*Pishvaian*, 402 Md. at 584)) (internal quotation marks omitted).  Continuing violations

---

[2] Although most (if not all) of the complaints were made by Ms. Braxton, the mother of Mr. Jones's children, Mr. Jones does not dispute that he knew or ought to have known of them.  Furthermore, not only does he own the property, but he implies in his brief that he has lived there at times.

11

that trigger the doctrine must be "'continuing unlawful acts, . . . not merely the continuing ill effects of a single earlier act.'" *Id.*

Ms. Smith engaged in two earlier acts, namely the construction of the addition and the construction of the rear patio and fence. That Mr. Jones continues to suffer alleged harms as a result of those two earlier acts does not convert the acts into continuing harms. For Mr. Jones to sustain a negligence or trespass action in 2022 against Ms. Smith for her construction in 2010 and 2016, he would need to show that Ms. Smith has since engaged in a "'series of acts or course of conduct that would delay the accrual of a cause of action[.]'" *Litz v. Maryland Dep't of Env't*, 434 Md. at 647 (quoting *MacBride v. Pishvaian*, 402 Md. at 585). Mr. Jones did not show any such conduct.

Mr. Jones had three years from Ms. Smith's construction of the addition in 2010 and three years from her construction of the rear patio and fence in 2016 to sue for negligence and trespass. His 2022 complaint is barred by the statute of limitations.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**